UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHINONYE MADU, a Michigan resident,<br><br>       Plaintiff,<br><br>v.<br><br>DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT, ANGEL GARCIA III, CYNTHIA ALEXANDER,<br><br>       Defendants. | CASE No: _____<br><br>HON. _____<br><br>MAGISTRATE JUDGE _____ |

## VERIFIED COMPLAINT

Plaintiff CHINONYE MADU ("Madu" or "Plaintiff") states as follows for his Verified Complaint against Defendants:

## INTRODUCTION

1. Madu is a certificated and tenured teacher, employed by the Defendant, Detroit Public Schools Community District ("DPSCD" or "the District"). Madu currently teaches as a Resource Teacher at Western International High School, Detroit, Michigan, and has been employed by the District since April 5, 2000, in various teaching positions and locations within the District. This is a civil rights action arising from Defendants' actions against Madu that has harmed and continues to harm

him. This action is based on 42 U.S.C. § 1983; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Michigan Constitution (Article I, Section 17 of the Michigan Constitution of 1963, Due Process Clause); state common law; and related state statutes, codes, and regulations.

2. Madu holds the following qualifications and certifications: Teachers Grade 11, N.C.E. Nigerian Certificate of Education, B.Ed, Educational Management and Planning; Political Science, M.Ed; Special Education - Learning Disabilities; Teacher Certifications - Learning Disability K-12, Social Studies 6-12, Political Science 6-12.

3. Defendants, Angel Garcia III and Cynthia Alexander, have engaged in a concerted effort to have Madu fired from his position by among other things: orchestrating and coercing students to file unfounded allegations against Madu, entering non-existing classroom observation reports into Madu's personnel record; orchestrating a campaign to tarnish Madu's image and reputation.

## JURISDICTION AND VENUE

4. This is a civil rights action based on 42 U.S.C. § 1983; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Michigan Constitution; state common law; and related state statutes, codes, and regulations.

5. Plaintiff resides in Detroit, Michigan. All the Defendants herein reside and/or work in Detroit, Michigan. The events, acts, and/or omissions complained of herein occurred in Wayne County, Michigan, and this action is properly assigned the U.S. District Court of Michigan, Eastern District.

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). This Court has supplemental jurisdiction over related state claims from the same case or controversy under 28 U.S.C. § 1367(a).

7. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

8. Madu is a certificated and tenured teacher, employed by the District.

9. The District is a public entity and an educational service agency established and maintained by the laws and constitution of the State of Michigan, and owns, operates, manages, directs, and employs and/or is responsible for other Defendants in this action. The district is vicariously liable for state law torts of its employees and agents committed within the scope of their employment.

10. Defendant Angel Garcia III is at all relevant times the Principal of Western International High School, acting within the course and scope of that employment. Defendant Garcia is sued in his individual and official capacities.

11. Defendant Cynthia Alexander is at all relevant times the Assistant Principal of Western International High School, acting within the course and scope of

that employment. Defendant Alexander is sued in her individual and official capacities.

12. Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, intentionally, recklessly, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused damages to Plaintiff.

13. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times, an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

14. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to other Defendants, and ratified and/or authorized the acts or omissions as alleged herein, except as may be hereafter otherwise specifically alleged.

15. At all material times, each Defendant was both jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional and statutory rights and other harm.

16. At all material times, each Defendant acted under color of the laws, statutes, ordinances, policies, practices, customs, and usages of the State of Michigan and DPSCD.

17. Plaintiff is informed and believes, and thereon alleges, that at all material times, Defendants, and each of them, were and are persons and entities whose conduct is governed and regulated by all Michigan laws and statutes, including the common law, the Michigan Constitution, and the public policy of the State of Michigan.

18. Plaintiff is informed and believes, and thereon alleges, that the unlawful actions complained of herein, as a result of which Plaintiff sustained the damages enumerated below, were and are violations of the laws of the State of Michigan and the United States.

19. This action is timely filed within all applicable statutes of limitation.

## GENERAL ALLEGATIONS

20. Madu is a certificated and tenured teacher, employed by DPSCD and currently teaches as a Resource Teacher at Western International High School, Detroit, Michigan, and has been employed by the District since April 5, 2000, in various teaching positions and locations within the District.

21. Madu holds the following qualifications and certifications: Teachers Grade 11, N.C.E. Nigerian Certificate of Education, B.Ed, Educational Management

and Planning; Political Science, M.Ed; Special Education - Learning Disabilities; Teacher Certifications - Learning Disability K-12, Social Studies 6-12, Political Science 6-12.

<u>*Non-existing Classroom Observation*</u>

22. Plaintiff received "Effective" or "Highly Effective" evaluations for every year that he taught between 2005 and 2019.

23. In the 2020-2021 school year, Plaintiff received "Effective" evaluation with a Score of 77.5.

24. In the 2021-2022 school year, Plaintiff received from Defendant Alexander a "Default Effective" evaluation for "Missing Cycle Data".

25. In the 2022-2023 school year, Plaintiff received from Defendant Alexander "Minimally Effective" evaluation with a Score of 52.06.

26. In this 2022-2023 evaluation, Defendant Alexander claimed that she conducted evaluation of Plaintiff during classroom observation on Cycle1-time frame on January 27, 2023 and finalized it on April 24, 2023. Defendant Alexander had never debriefed or shared this evaluation with Plaintiff.

27. In this 2022-2023 evaluation, Defendant Alexander also claimed that she conducted evaluation of Plaintiff during classroom observation on Cycle 2-time frame on February 27, 2023, between 10.20 a.m. to 11.20 a.m., except that no such observation ever took place.

28. On June 14, 2023, Defendant Alexander met Plaintiff on the first day of Summer School Workshop and asked him if he had reviewed his evaluation. Thereafter, they both went to Defendant Alexander's office, where Defendant Alexander declared " I did not rate you ineffective as intended". Plaintiff informed Defendant Alexander that she could not have observed him during classroom observation on Cycle 2-time frame on February 27, 2023, between 10.20 a.m. to 11.20 a.m., because that was his lunch hour period. Plaintiff also asked Defendant Alexander to state what class or subject he was teaching during this purported observation. Defendant Alexander promptly glanced with unease into her computer and deleted all entries pertaining to the purported Cycle 2 observation, and yet, she gave Plaintiff a rating of "Minimally Effective".

29. Plaintiff appealed the "Minimally Effective" rating for the 2022-2023 to DPSCD and on September 12, 2023 DPSCD reversed and increased the rating to "Effective".

30. Defendant Alexander has engaged in this pattern of unacceptable behavior towards Plaintiff.

31. Plaintiff had appealed to Defendant Garcia on several occasions to rectify this wrong and has been met with silence, evasion and obstruction from Defendant Garcia.

<u>*Orchestrating and Coercing Students to File*</u>
<u>*Unfounded Allegations Against Madu*</u>

32.     On October 22, 2021, Tiffany Patten, Office of Employee Relations with DPSCD, held an Investigatory Interview with Plaintiff because he was charged with violating Work Rule S, which prohibits employees from fraternizing with students ("Work Rule S") and District Policy 1662, Anti-Harassment Policy ("Policy 1662"). The allegation was filed by a student who had refused to remove her Air Pods from her ears during Plaintiff's class and was removed from the class by Plaintiff. Detroit Federation of Teachers union representative, Lakia Wilson, accompanied Plaintiff to the interview.

33.     Part of this investigation referenced an alleged prior written warning given to Plaintiff on January 13, 2020 for violating Work Rule S. Except that there was never any such warning given to Plaintiff on January 13, 2020, nor any such prior charge against Plaintiff for such a violation.

34.      At the conclusion of the October 22, 2021 investigation, DPSCD found that the allegations against Plaintiff were unsubstantiated and recommended that no discipline should be given.

35.     While the October 22, 2021 investigation concluded that the allegations against Plaintiff were unsubstantiated, it referenced and relied on a non-existing so-

called written warning/reprimand of January 13, 2020 against Plaintiff, which continued to be part of his personnel record.

36. On December 20, 2022, Tina Currie, Office of Employee Relations with DPSCD, held another Investigatory Interview with Plaintiff because he was charged with violating Work Rule S, Policy 1662, Board Policy 3210, Standards of Ethical Conduct, Board Policy 3213, Student Non-Fraternization, the prohibition against Unprofessional Conduct, and any other infractions as may become known during investigation.

37. The December 20, 2022 investigation involved an allegation that Plaintiff "made inappropriate remarks and executed inappropriate glances" at a student.

38. Again, this December 20, 2022 investigation referenced or relied on non-existing Written Reprimands given to Plaintiff on January 13, 2020 and December 2, 2019, for violating Work Rule S.

39. At the conclusion of the December 20, 2022 investigation, this time DPSCD found that because of Plaintiff's "**years of service and prior discipline**, it is recommended that Mr. Madu receive a 1-day unpaid suspension. Any further actions of this nature may result in additional discipline, up to and including termination". This decision was made despite unrefuted eyewitness testimony of

another teacher present when the alleged incident occurred and who testified that Plaintiff did not engage in the prohibited conduct or behavior levelled against him.

40. Again, this December 20, 2022 investigation referenced and relied on non-existing so-called written warning/reprimand of January 13, 2020 and December 2, 2019, for violating Work Rule S and "**prior discipline**" record to support unsubstantiated 1-day unpaid suspension.

41. Plaintiff has lodged several complaints with Defendant Garcia seeking information and clarification on the alleged written warning/reprimand of January 13, 2020 and December 2, 2019 and has been met with silence, evasion and obstruction from Defendant Garcia. Plaintiff lodged such complaints to Defendant Garcia on June 24, 2021, June 23, 2021, June 29, 2021, June 25, 2021, July 1, 2021, October 22, 2021, August 30, 2023,  May 13, 2022, May, 10, 2022, May 9, 2022, May 5, 2022.

42. The December 20, 2022 investigation clearly referenced and relied on non-existing so-called written warning/reprimand of January 13, 2020 and December 2, 2019 against Plaintiff, which continued to be part of his personnel record.

43. Upon information and belief, Defendants Alexander and Garcia were behind the unsubstantiated allegations levelled by certain students against Plaintiff, and they engaged in concerted effort to have Madu fired from his position by among

other things: orchestrating and coercing students to file unfounded allegations against Plaintiff, entering non-existing classroom observation reports into Madu's personnel record; orchestrating a campaign to tarnish Plaintiff' image and reputation with charges of misbehavior towards students, and DPSCD has allowed, condoned and fostered this action to continue despite complaints of Plaintiff.

## COUNT ONE
## DEPRIVATION OF PROCEDURAL DUE PROCESS

44. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

45. The Defendants violated Plaintiff's due process rights under the Michigan and United States Constitutions.

46. Courts have recognized that public employees have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *Relford v. Lexington-Fayette Urban Cty. Gov't*, 390 F.3d 452, 460 (6th Cir. 2004) ("Under state law, government and civil service employees may have a property right in their continued employment.").

47. Plaintiff is a certificated and tenured teacher employed by the District.

48. The U.S. Supreme Court has held that, when an employer's "rules and understandings" and the "policies and practices of the institution" create a legitimate claim of entitlement to continued employment, a teacher has a Due Process property right in his or her continued employment. *Perry v. Sindermann,* 408 U.S. 593, 602-03 (1972).

49. In 2011, the Michigan Legislature adopted a uniform teacher evaluation system that mandated that layoffs and dismissals of teachers were to be in accord with their teacher-effectiveness ratings promulgated under that system.

50. "Property interests are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

51. In 2011, the Michigan Legislature amended the Michigan Teacher Tenure Law and Michigan's Revised School Code to create a "rigorous, transparent and fair performance evaluation system." MCL 380.1249(1). This system is to foster the "remov[al of] ineffective tenured and untenured teachers and school administrators after they have had ample opportunities to improve, and ensuring that these decisions are made using rigorous standards and

streamlined, transparent, and fair procedures." MCL 380.1249(1)(d)(iv) (emphasis added). To the extent these statutes call for dismissal, demotion, or deprioritizing less-effective teachers when making staffing changes, the Legislature coupled those provisions with mandates on school districts to give "timely and constructive feedback" to teachers (MCL 380.1249(1)(a)) by creating individualized development plans (IDPs) that "include specific performance goals that will assist in improving effectiveness for the next school year and are developed by the school administrator or his or her designee conducting the evaluation, in consultation with the teacher…" MCL 380.1249(2)(c). Thus, the possibility of removal, layoffs, etc. due to not being found "Effective" are the incentive to improve.

52. The 2011 amendments require that all probationary teachers have an "individualized development plan" developed "in consultation with the individual teacher." MCL 38.83a. Such teachers must receive an annual year-end performance evaluation that is based on "classroom observations" and an assessment of the teacher's progress in "meeting the goals of his or her individualized development plan." The evaluation "shall be conducted in accordance with section 1249…" *Id*. There must be "at least 2 classroom observations each school year," and at least one of those must be by "the school administrator responsible for the teacher's performance evaluation." The teacher

must receive feedback within "30 days after each observation." This feedback "must include a review of the teacher's lesson plan and the state curriculum standard being used in the lesson." MCL 380.1249(2)(e).

53. Furthermore, if a teacher is rated "Minimally Effective" or "Ineffective" in his or her most recent annual year-end evaluation, the school administrator or designee shall develop "an individualized development plan… in consultation with the teacher," that includes "goals and training" to "assist the teacher to improve his or her effectiveness." MCL 380.1249(2)(c). That teacher's "performance evaluation system must include a midyear progress report" that must "assist a teacher to improve," be "aligned with the teacher's individualized development plan," and "include specific performance goals for the remainder of the school year." This must include a "written improvement plan" developed "in consultation with the teacher." MCL 380.1249(2)(d).

54. Federal courts recognize that a teacher has a right in having a positive teacher effectiveness status, once it is conferred, not be taken away without Due Process. "[M]uch goes into evaluating teachers and assigning ratings under this system. An effectiveness rating is something that must be earned and conferred, much the same as a veteran's preference status and a rank on a promotion eligibility list." *Southfield Educ. Ass'n. v. Bd. Of Educ. Of the Southfield Pub. Sch.*, No. 17-11259 (E.D. Mich. Mar. 27, 2018), at *9-10.

55. The Plaintiff was deprived of a "rigorous, transparent, and fair" evaluation system. In the 2022-2023 school year, Plaintiff received from Defendant Alexander "Minimally Effective" evaluation with a Score of 52.06, based on a classroom observation that never existed and was promptly deleted by Defendant Alexander when her scheme was uncovered. Further, Defendant Alexander never debriefed or shared his classroom observation evaluation with Plaintiff for the 2022-2023 school year as required by Michigan statute. It was only through a subsequent appeal that DPSCD reversed and increased the rating to "Effective". Unlike the U.S. Court of Appeals for the Sixth Circuit's holding in *Hasanaj v. Det. Pub. Sch. Cmty. Dist.*, [35 F.4th 437 *; 2022 U.S. App. LEXIS 13532 **; 2022 FED App. 0108P (6th Cir.); 2022 WL 1573650], where the Plaintiff was not a tenured teacher, Mr. Madu, as a tenured teacher has a protected property interest in governmental compliance with related state-law procedures. Further, unlike this Court's holding in *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.* 2021 U.S. Dist. LEXIS 71920 *; 2021 WL 1405173, where the Court adopted the ruling in *Ryan v. Aurora City Board of Education*, 540 F.2d 222 (6th Cir. 1976), for the proposition that compliance with standards set forth in teacher tenure and evaluation laws is a matter of state law, not a matter to be policed by the federal courts under the Due Process Clause, in the instant case, Defendant Alexander injected false or non-existing class room observation report – an independent state tort – into Mr. Madu' evaluation.

56. Under Michigan law, MCL § 38.101. Sec 1. , " . . . discharge or demotion of a teacher on continuing tenure may be made only for a reason that is not arbitrary or capricious and only as provided in this act" . Further, such discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause; reasonable and just cause can be shown only by significant evidence proving that the teacher is unfit to teach; the focus of this evidence must be the effect of the teacher's questioned activity on the students. *Hagerty v. State Tenure Com.,* 179 Mich. App. 109, 445 N.W.2d 178, 1989 Mich. App. LEXIS 401 (Mich. Ct. App. 1989).

57. By relying on and referencing non-existing so-called written warning/reprimand of January 13, 2020 and December 2, 2019 against Plaintiff, in the December 20, 2022 investigation and subsequent discipline, Defendants acted against Plaintiff in an arbitrary or capricious manner and violated Plaintiff's due process rights under the Michigan and United States Constitutions.

COUNT TWO
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

59. Defendants' conduct and actions as outlined above were intentional.

60.     Defendants' conduct and actions as outlined above were extreme, outrageous, and of such character as not be tolerated by a civilized society.

61.     Defendants' conduct and actions resulted in severe and serious emotional distress to Plaintiff.

62.     As a direct and proximate result of Defendants' unlawful actions against Plaintiff, he has suffered depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

COUNT THREE
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

63.     Plaintiff incorporates by reference the allegations of the preceding paragraphs.

64.     At all relevant times, Plaintiff has had a reasonable expectation of continued employment with good, rewarding and fulfilling relationships with his employer, students, fellow teachers and administrators.

65.     Defendants Garcia and Alexander are intimately aware of the fact that Plaintiff has a reasonable expectation of continued good, rewarding and fulfilling relationships with his employer, students, fellow teachers and administrators.

66. Plaintiff has consistently taken steps to protect and maintain these relationships as outlined above and has a reasonable expectation of such ongoing and continuing relationships.

67. Defendants have undertaken tortious actions that has disrupted and harmed these relationships as outlined above.

68. These acts proximately have caused and will continue to cause the Plaintiff harm and disruptions with respect to these relationships.

69. These acts have caused Plaintiff both irreparable injury and damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

- Rescission of the December 20, 2022 investigation finding that Plaintiff receive a 1-day unpaid suspension.

- Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable.

- Punitive damages under 42 U.S.C. § 1983 and Michigan law in an amount according to proof and which is fair, just, and reasonable.

- All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988, and applicable Michigan law.

- Such other and further relief as supported by the evidence in his case and as this Court and/or the jury may deem appropriate.

Respectfully submitted, this 7th day of November, 2023

/s/ Augustine O. Igwe
_____
Augustine O. Igwe
Michigan Bar No. P40053
Attorneys for Plaintiff

AUGUSTINE O. IGWE P.C.
39500 High Pointe Blvd, Suite 400
Novi, MI 48375
Ph.: (248) 344-2280; Fax: (248) 671-5214
Email: aigwe@igwelawgroup.com

## **VERIFICATION**

The undersigned swears and affirms that the allegations in the above complaint are true and accurate to the best of his knowledge, information and belief:

Date: November _____, 2023    By: _____
                                    Chinonye Madu

Subscribed and sworn to before me

this _____ day of _____, 2023.

_____
Notary Public
_____ County,
State of Michigan
My Commission Expires: _____

## JURY DEMMAND

Plaintiff, CHINONYE MADU, by his attorneys, AUGUSTINE O. IGWE, P.C., hereby demands a trial by jury of the above-captioned cause.

Respectfully submitted,

/s/ Augustine O. Igwe
_____
Augustine O. Igwe
Michigan Bar No. P40053
Attorneys for Plaintiff
November 7, 2023

AUGUSTINE O. IGWE P.C.
39500 High Pointe Blvd, Suite 400
Novi, MI 48375
Ph.: (248) 344-2280; Fax: (248) 671-5214
Email: aigwe@igwelawgroup.com