## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHINONYE MADU,

      Plaintiff,

v.

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT,

      Defendant.

_____/

Case No. 2:23-cv-12825
Hon. Brandy R. McMillion

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE (ECF No. 16) AND GRANTING DEFENDANT'S MOTION TO DISMISS (ECF No. 15)

Before the Court are Defendant Detroit Public Schools Community District's ("DPSCD" or "the District") Motion to Dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 15), and Plaintiff Chinonye Madu's ("Madu") Motion to Strike the Motion to Dismiss as untimely (ECF No. 16). Having reviewed the parties' briefs, the Court finds oral argument unnecessary. *See* E.D. Mich. LR 7.1(f). Because an untimely motion to dismiss under Rule 12(b)(6) can be treated as a motion for judgment on the pleadings under Rule 12(c), the Court **DENIES** Madu's Motion to Strike. Evaluating the motion on its merits, the Court **GRANTS** DPSCD's Motion to Dismiss because Madu fails to allege sufficient facts

1

to state a claim for relief.  Therefore, Madu's First Amended Complaint (ECF No. 12) is **DISMISSED WITHOUT PREJUDICE**.

## I.

It is first helpful to consider the statutory backdrop of this case.  In Michigan, the Teachers' Tenure Act ("Tenure Act"), Mich. Comp. Laws Ann. §§ 38.71 to 38.191, controls tenure for teachers.[1]  *Hasanaj v. Detroit Pub. Sch. Cmty. Dist.*, 35 F.4th 437, 442 (6th Cir. 2022).  Michigan teachers gain "continuing tenure" only after completing a probationary period.  Mich. Comp. Laws Ann. § 38.91(1).  Once tenured, a teacher cannot be "dismissed or demoted" without following the strictures of the Tenure Act, and any such dismissal or demotion cannot be for an "arbitrary or capricious" reason.  *Id.* at §§ 38.91(1), 38.101(1).  Here, Madu claims he was demoted.

The Tenure Act defines "demote" as to "reduce compensation for a particular school year by more than an amount equivalent to 30 days' compensation . . . ."  Mich. Comp. Laws Ann. § 38.74.  Section 38.74 continues, however, that "demote" does not include "the discontinuance or reduction of performance-based compensation paid" under Mich. Comp. Laws Ann. § 380.1250.  *Id.*  Section

---

[1] The Michigan Legislature recently amended the Tenure Act.  *See* 2023 Mich. Pub. Acts 225, effective July 1, 2024.  The events of this case occurred before the effective date of the amendments, so the Court evaluates the Motion to Dismiss under the pre-amendment language of the Tenure Act.

380.1250, in turn, requires school districts to implement compensation methods to consider job performance and accomplishments as "significant factor[s]" in determining a teacher's "compensation and additional compensation." Mich. Comp. Laws Ann. § 380.1250(1). Assessing job performance requires incorporating a "rigorous, transparent, and fair evaluation system" to evaluate performance based on student-growth data and other objective criteria. *Id.*[2] The evaluation system must "us[e] multiple rating categories" that account for "student growth and assessment data," and "rate[] teachers as highly effective, effective, minimally effective, or ineffective." Mich. Comp. Laws Ann. § 380.1249(1)(c); *see also id.* at § 380.1249(2)(g) (requiring evaluation system to assign effectiveness level to each evaluated teacher based on score in annual year-end evaluation).

According to the First Amended Complaint, Madu is a tenured teacher at Western International High School in Detroit, Michigan. *First Amended Complaint*, ECF No. 12, PageID.213-214, ¶¶ 1-2. He has been employed by DPSCD since April 2000. *Id.* Madu alleges that two of the District's employees, Angela Garcia, III ("Garcia")—the principal of Western International High School—and Cynthia Alexander ("Alexander")—the assistant principal—took steps to have Madu fired. *Id.* at PageID.214-215, ¶¶ 3, 10-11. This conduct is split into two categories: (1)

---

[2] Mich. Comp. Laws Ann. § 380.1250(2) relates to collective bargaining agreements ("CBA"). There are no allegations that a CBA exists here.

3

"non-existing" classroom observations and (2) coercing students to file unfounded allegations against Madu. *Id.* at PageID.217, 219.

*Classroom Observations*. For over a decade, Madu received teaching evaluations that rated him either "Effective" or "Highly Effective." ECF No. 12, PageID.217, ¶¶ 18-19. But, for the 2021-2022 school year, Madu "received from Alexander" a finding of "Default Effective" because he was "Missing Cycle Data." *Id.* at ¶ 20. The following school year, 2022-2023, Alexander gave Madu a "Score of 52.06" and found him "Minimally Effective." *Id.* at ¶ 21.

In her 2022-2023 evaluation, Alexander claimed to have evaluated Madu during two classroom observations, one in late January 2023, the other in late February 2023. ECF No. 12, PageID.217, ¶¶ 22-23. Alexander "never debriefed" Madu on the January 2023 observation and never "shared this evaluation" with him. *Id.* at PageID.217, ¶ 22. And Madu says the observation a month later "never took place." *Id.* at ¶ 23.

In mid-June 2023, Alexander and Madu met and spoke about Madu's 2022-2023 evaluation. ECF No. 12, PageID.218, ¶ 24. The two went to Alexander's office where she said to him, "'I did not rate you ineffective as intended'." *Id.* Madu informed Alexander that she "could not have observed him" when she claimed (February 27, 2023, between 10:20 a.m. and 11:20 a.m.) because "that was his lunch hour period." *Id.* He also asked Alexander to "state what class or subject he was

teaching" during the alleged observation. *Id.* "Alexander promptly glanced with unease into her computer and deleted all entries pertaining to the purported Cycle 2 observation, and yet, she gave [Madu] a rating of 'Minimally Effective'." *Id.*

Trying to "rectify this wrong," Madu "appealed to Garcia on several occasions" but was "met with silence, evasion and obstruction from Garcia." ECF No. 12, PageID.218, ¶ 27. He also appealed his "Minimally Effective" rating to the District, which "reversed and increased the rating to 'Effective'" in mid-September 2023. *Id.* at ¶ 25.

*Student Allegations and District Investigations*. In late October 2021, Madu was interviewed in relation to charges of violating District policies against harassment and employee fraternization with students. ECF No. 12, PageID.219, ¶ 28. The charges related to allegations that Madu removed a student from his classroom after she refused to remove her Apple AirPods from her ears. *Id.* The October 2021 investigation "referenced and relied on" a "non-existing" January 2020 written warning for a previous "Work Rule S" violation, a rule that prohibits employee-student fraternization. *Id.* at PageID.219-220, ¶¶ 28-29, 31. According to Madu, however, he was never given a warning in January 2020, nor was there "any such prior charge against [him] for such a violation." *Id.* at PageID.219, ¶ 29. At the end of the October 2021 investigation, DPSCD determined the allegations

against Madu were "unsubstantiated and recommended that no discipline should be given." *Id.* at ¶ 30.

Over a year later, in late December 2022, Madu was interviewed once more on charges of violating several District policies. ECF No. 12, PageID.220, ¶ 32. These charges stemmed from an allegation that he made inappropriate comments and glances at a student. *Id.* at ¶ 33. As with the October 2021 investigation, the December 2022 investigation referenced the January 2020 written warning. *Id.* at ¶ 35. It also referenced another written warning from December 2019 (also "for violating Work Rule S."). *Id.* The December 2022 investigation ended with DPSCD recommending a one-day unpaid suspension for Madu because of his "'years of service and *prior discipline*'" and warning that similar action in the future could lead to further discipline, including termination. *Id.* at PageID.220-221, ¶ 36 (emphasis in First Amended Complaint). According to Madu, DPSCD reached this decision despite another teacher's "unrefuted eyewitness testimony" that Madu did not do what he was accused of. *Id.*

On eleven occasions between June 2021 and August 2023, Madu "lodged several complaints" with Garcia seeking information about the December 2019 and January 2020 warnings. ECF No. 12, PageID.221, ¶ 38. His complaints were "met with silence, evasion and obstruction from Garcia" and the warnings remain a part of his record. *Id.* at ¶¶ 38-39.

6

Madu believes Garcia and Alexander were "behind the unsubstantiated allegations" against him.  ECF No. 12, PageID.221-222, ¶ 40.  He alleges that, in a "concerted effort" to have him fired, Garcia and Alexander "orchestrat[ed] and coerc[ed] students to file unfounded allegations against [him]; enter[ed] non-existing classroom observation reports into [his] personnel record"; and "tarnish[ed] [his] image and reputation with charges of misbehavior" with students.  *Id.*  All the while, DPSCD "allowed, condoned and fostered" Garcia and Alexander's conduct despite Madu's complaints.  *Id.*  Taken together, this conduct "effectively caus[ed] [him] to be demoted from his position[]" as a tenured teacher.  *Id.*  He specifically alleges he was "effectively" demoted when he was denied an "ESE bonus of $7,500" for the 2021-2022 school year (the year of the student allegations) and was "remov[ed] . . . from the Impact Program" for the 2023-2024 school year (the year following the classroom observations), which "cost [Madu] $10,000 in compensation, and continuing . . . ."  *Id.* at PageID.222, ¶ 41.  "[T]hese unlawful actions," Madu alleges, "reduced [his] compensation for the particular school years by more than an amount equivalent to 30 days' compensation."  *Id.* at PageID.222-223, ¶ 41.

## II.

As an initial matter, Madu argues that the District's Motion to Dismiss was untimely and that the Court should strike it.  *See* ECF No. 16.  Madu initially sued Garcia, Alexander, and DPSCD in early November 2023.  ECF No. 1.  A month later,

those three defendants moved to dismiss. ECF No. 7. After the Honorable Laurie J. Michelson declined to exercise supplemental jurisdiction over state law claims and dismissed them, ECF No. 8, Madu moved for leave to amend his complaint, ECF No. 9. Judge Michelson granted Madu leave to amend (though unnecessary because he sought to amend his complaint within the time to amend as a matter of course), requiring him to file his amended complaint by January 5, 2024.

Madu timely filed his First Amended Complaint on January 5, 2024. ECF No. 12. This time, however, he only sued DPSCD. *Id.* Although the allegations in the complaint reference Garcia and Alexander, neither is a named defendant. *Id.* Madu raises a single claim for deprivation of his procedural due-process rights under the Michigan and United States Constitutions against DPSCD. *Id.* at PageID.223-228.

On January 26, 2024, DPSCD filed its Motion to Dismiss the First Amended Complaint. On January 29, 2024, Judge Michelson struck the Motion for failure to comply with her case management requirements; but that same day, DPSCD refiled a corrected Motion. *See* ECF No. 15. Madu moved to strike the Motion as untimely (ECF No. 16) but also responded to the Motion to Dismiss (ECF No. 19); and DPSCD replied in support of its Motion (ECF No. 20).[3]

---

[3] On April 2, 2024, this case was reassigned from Judge Michelson to the undersigned.

Because an untimely motion to dismiss "may be properly considered as one for judgment on the pleadings under Fed. R. Civ. P. 12(c), and evaluated, nonetheless, under the standards for dismissal under 12(b)(6)," the Court is not persuaded that it should strike the motion. *See Doe v. Sentech Empl. Servs.*, 186 F. Supp. 3d 732, 736 (E.D. Mich. 2016) (quotation marks and citations omitted); *see also Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988). Given the nature of the claims raised in the Complaint, the relative minimal delay, and the lack of prejudice, the Court declines to strike the Motion and will accept the briefs as filed. The Court will treat DPSCD's Motion to Dismiss as a motion for judgment on the pleadings under Rule 12(c).

A motion for judgment on the pleadings under Rule 12(c) "generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)," so the Court must apply the same standards governing Rule 12(b) motions to dismiss. *Bates*, 958 F.3d at 480. In reviewing the Motion, the Court "must accept as true all well-pleaded factual allegations," which must "plausibly give rise to an entitlement to relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Facial plausibility requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009); *see Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) ("The facts cannot make it merely possible that the defendant is

liable; they must make it plausible.  Bare assertions of legal liability absent some

corresponding facts are insufficient to state a claim.").  The inquiry ultimately tests

"whether, as a matter of law, the plaintiff is entitled to legal relief even if everything

alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

The court need not accept as true the complaint's legal conclusions, however.  *Iqbal*,

556 U.S. at 678-79.

### III.

DPSCD raises three relevant arguments.[4]  It first argues Madu does not have

a property interest in governmental compliance with state-law procedures.  Next, it

argues that the ESE bonus and compensation from the Impact Program are simply

"pure benefits of employment" that should be resolved in a state breach-of-contract

action, not in federal court.  Last, it argues it cannot be held vicariously liable for

any violation of Madu's constitutional rights, i.e., he cannot establish municipal

liability.  Because the municipal liability argument is dispositive, the Court addresses

that argument only.  *See Agema*, 826 F.3d at 333 (declining to consider arguments

---

[4] DPSCD's Motion also includes arguments about the individual liability of Garcia
and Alexander and whether they are subject to qualified immunity.  ECF No. 15,
PageID.291-294.  However, as stated, Madu removed Garcia and Alexander as
defendants when he amended his complaint, leaving DPSCD as the only remaining
defendant.  The arguments relating to Garcia and Alexander are therefore moot.  *See,
e.g., Cameron v. Mesko*, No. 12-11206, 2012 WL 5328680, *1-2 (E.D. Mich. Oct.
29, 2012) (denying motion to dismiss as moot where the plaintiff removed a party
as a defendant from his amended complaint).

regarding whether complaint plausibly alleged deprivation of constitutional rights where it did not allege sufficient facts to find an applicable municipal policy or custom).

Under 42 U.S.C. § 1983, a municipality can be held liable only if the plaintiff demonstrates that the injury suffered was a direct result of the municipality's official policy or custom. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978). In other words, municipalities cannot be held liable under § 1983 on a theory of *respondeat superior*. *Id.*; *Kovalchuk v. City of Decherd, Tenn.*, 95 F.4th 1035, 1038 (6th Cir. 2024) (citations omitted). A municipality may instead be held liable "only for its *own* illegal acts." *Kovalchuk*, 95 F.4th at 1038 (cleaned up). So, when a plaintiff sues a local governmental entity, like a school district, they must connect an employee's allegedly unconstitutional conduct to a municipal "policy" or "custom." *Id*. (citations omitted). A litigant may show a policy or custom by looking to: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* From there, a plaintiff "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted).

11

None of the four avenues for showing a policy or custom are satisfied by Madu's allegations. *See Kovalchuk*, 95 F.4th at 1038. There is no suggestion that Garcia, Alexander, or anyone else within the District received inadequate training or supervision under some District policy. *See id.* He also alleges no facts suggesting there are any illegal municipal legislative enactments or official agency policies that led to his alleged demotion. *Id.* At best, he has conclusory allegations that Garcia and Alexander acted under the color of "laws, statutes, ordinances, policies, practices, customs, and usages of the State of Michigan and DPSCD." ECF No. 12, PageID.216, ¶ 12. But conclusory allegations do not state plausible claims. *See Iqbal*, 556 U.S. at 680.

Madu's allegations also fail to connect Garcia and Alexander's conduct to the denial of the ESE bonus or his removal from the Impact Program, much less any policy or custom of the District. He alleges that Garcia and Alexander's conduct, and the District's fostering of it, "effectively" caused him to be demoted. That allegation leaves much to be desired. It provides no details on whether Garcia or Alexander actually had a role in deciding whether to award the ESE bonus or who to include in the Impact Program. Did they, together, decide to deny Madu the ESE bonus or remove him from the Impact Program? Or was it their conduct that led someone else to make that decision? Was it someone else at the District? Was it someone at the Tenure Commission? On the allegations here, the Court cannot infer

one way or the other.  And conclusory statements are not enough to satisfy Madu's pleading obligations.  *See Iqbal*, 556 U.S. at 680.

The remaining two avenues are arguably relevant here, but Madu's allegations fail to show a policy or custom under those, too.  First, Madu focuses on the conduct of Garcia (the principal) and Alexander (the assistant principal).  But beyond stating their positions at the school, his amended complaint alleges no facts suggesting that either individual had "final decision making authority" with respect to the ESE bonus or the Impact Program.  *See Kovalchuk*, 95 F.4th at 1038; *see also Jorg v. City of Cincinnati*, 145 F. App'x 143, 146-47 (6th Cir. 2005) (detailing considerations of when an individual has "final decision making authority").  His allegations (and his response to the motion to dismiss) actually suggest that they did not.  *See* ECF No. 12, PageID.218, ¶ 25 (alleging that Madu appealed Alexander's "Minimally Effective" rating and that DPSCD "reversed and increased" his rating to "Effective"); ECF No. 18, PageID.336 (referencing provisions of the Tenure Act providing opportunity to appear before the Tenure Commission to challenge "proposed action" and allowing "review of the Tenure Commission's *final decision* in court").  And, as noted, Madu failed to allege facts allowing the inference that Garcia and Alexander were even involved in the decisions on the ESE bonus and Impact Program.

Second, Madu does say that DPSCD "allowed, condoned and fostered" the actions of Garcia and Alexander "to continue despite" his complaints.  ECF No. 12, PageID.222, ¶ 41.  However, this allegation, like others, is conclusory and fails to sufficiently state a plausible claim.  *See Iqbal*, 556 U.S. at 680.  He alleges no facts allowing the Court to infer that there was a "custom of tolerance or acquiescence of federal rights violations," whether similar to the circumstances here or generally. *See Kovalchuk*, 95 F.4th at 1038.  There are no allegations that there existed a "clear and persistent pattern" of civil rights violations, of which the District had notice.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (listing four requirements to be satisfied when arguing under a custom-of-tolerance-or-acquiescence theory).  True, the allegation that DPSCD "allowed, condoned and fostered" the conduct of Garcia and Alexander suggests a "tacit approval" of their conduct.  *See id.*  But as alleged, that is unsupported by sufficient facts, is conclusory, and does not establish that the District was deliberately indifferent in failing to act such that it amounted to an official policy of inaction.  *See id.*  Nor does Madu allege any facts allowing an inference that any custom was the "moving force" or "direct causal link" in a constitutional deprivation.  *See id.* (internal quotation marks omitted).  Madu has simply failed to allege sufficient facts to allow the Court to reasonably infer that any District policy or custom led to his alleged demotion.

**IV.**

14

Based on the foregoing, the Court dismisses this proceeding.  The facts, as alleged and accepted as true, fail to provide the Court with enough information to even infer that Madu is entitled to relief.  Specifically, he has failed to allege sufficient facts to support a municipal liability theory, so the Complaint must be dismissed.  Having dismissed on this ground, the Court does not reach the other arguments put forth by DPSCD in its Motion.

Accordingly, the Court **DENIES** Madu's motion to strike (ECF No. 16), **GRANTS** DPSCD's Motion to Dismiss (ECF No. 15), and **DISMISSES WITHOUT PREJUDICE** Madu's First Amended Complaint (ECF No. 12).

**This is a final order that closes the case.**

**IT IS SO ORDERED.**

Dated: July 2, 2024                                        s/Brandy R. McMillion
                                                                       BRANDY R. MCMILLION
                                                                       U.S. District Judge